UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


ARTHUR E. STALLWORTH

VERSUS

RALPH SLAUGHTER, ET AL

CIVIL ACTION

NUMBER 07-886-FJP-DLD


**<u>RULING</u>**

Plaintiff, Arthur E. Stallworth, a former Assistant Chancellor and current professor at Southern University, brings this action against Ralph Slaughter, Johnny G. Anderson, Richard J. Carlton, Jr., Warren A. Forstall, Dale N. Atkins, Lea D. Montgomery, Herman Lee Hartman, Sr., Louis Miller, Murphy Nash, Jr., E. Jean Ware, Achilles Williams, Myron K. Lawson, Tony M. Clayton, Rev. Samuel C. Tolbert, Jr., Mary Rideau Doucet, Rev. Jesse B. Bilberry, Afi C. Patterson, Fred Pitcher, and the Board of Supervisors of Southern University and Agricultural and Mechanical College alleging he was promised a pay increase that was never implemented. Plaintiff brings this action under 42 U.S.C. § 1983. Defendants contend that plaintiff has brought a 28 U.S.C. § 1983 action against state officials in their official capacities only and, therefore, plaintiff is not entitled to collect any monetary damages.

Defendants claim Stallworth is an at-will employee who was appointed Assistant Chancellor. Defendants contend plaintiff agreed to stay on as a teaching professor only after Chancellor

Doc#46866

Freddie Pitcher agreed to recommend a salary increase for him to the Board of Supervisors.  Following Hurricane Katrina, the state imposed a hiring and spending freeze in 2005.  However, the plaintiff continued in his job despite the fact that he did not get a salary increase.  While plaintiff claims this failure to increase his salary is a breach of contract, the defendants claim no contract ever existed between the parties.  Defendants argue that the plaintiff can only cite to conversations with Pitcher during which Chancellor Pitcher stated he would simply RECOMMEND an increase to the Board for the plaintiff.  Plaintiff also claims there was a due process violation because he had a property interest in his increased salary and reduced or lost salary.  The defendants rely on several defenses, including an 11th Amendment sovereign immunity defense and qualified immunity under 42 U.S.C. § 1983.  Defendants contend that the wage and contract claims under state law must be dismissed under both the 11th Amendment as well as under the defense of qualified immunity under the Section 1983 action.

Plaintiff argues the 11th Amendment does not bar prospective relief and the Fifth Circuit has applied *Ex Parte Young*[1] to employment cases.  Plaintiff claims he only agreed to continue to work in his position on the condition that he receive a pay increase.  He also claims that at the time Chancellor Pitcher

_____

[1]209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

offered and plaintiff accepted the 10% pay increase, a contract was formed.  Plaintiff argues that the budget freeze was only in effect until 2006, and he has not been given a reason why the pay increase was not implemented after the wage and hiring freeze was lifted.

Plaintiff also contends he has been denied due process because he contracted for and expected a salary increase.  Stallworth also argues that by contracting to one-year employment terms, universities such as Southern University create constitutionally protected property interests that cannot be destroyed by the university without procedural and substantive due process.[2] According to the plaintiff, the offer by Chancellor Pitcher and plaintiff's acceptance of the offer constituted a "mutually explicit understanding" as set forth in Fifth Circuit case law.[3] Plaintiff argues the *Engquist v.Oregon Department of Agriculture, et al*[4] decision relied on by the defendants is not relevant or controlling because it is based on discretion and "at-will" employment which plaintiff contends is not at issue under the facts of this case.

Plaintiff further contends that the language "subject to the approval of the Board" which was a condition placed in the offer

---

[2]*See Bueno v. City of Donna*, 714 F.2d 484, 492 (5th Cir. 1983).

[3]*Williams v. Texas Tech. University Health Sciences,* 6 F.3d 290 (5th Cir. 1993).

[4]553 U.S. 591, 128 S.Ct. 2146, 170 L.Ed.2d 975 (2008).

created a resolutory condition under La. C.C. art. 1767 which the Board ultimately accepted by its performance or silence.  Plaintiff also argues that the approval by the Board of Supervisors was not necessary under Louisiana law for the plaintiff to have a property interest in the salary increase.[5]  Plaintiff states that contractual rights "can and often do" create property interests.[6]

According to the plaintiff, he sustained a due process violation in his salary reduction.  Plaintiff argues that, as a tenured professor, his salary could not be reduced except for cause related to his performance, or some other legitimate government interest, and then only after notice and opportunity for hearing.[7] Finally, Stallworth contends that since the decision was made on an individual basis, it was an *ad hoc* action, and thus an arbitrary decision.

## I.   Law and Analysis

### A.   Summary Judgment Standard

Summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is

---

[5]*Jones v. City Parish of East Baton Rouge,* 526 So.2d 462 (La. App. 1st Cir. 1988).

[6]*Board of Regents of States Colleges v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

[7]*Moon v. Midwestern State University*, 2004 WL 575953 (N.D. Tex., Feb. 18, 2004).

entitled to a judgment as a matter of law."[8]  The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[9]  A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[10]  If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response."[11]

If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial.[12]  The nonmovant's burden may

---

[8]Fed. R. Civ. P. 56(c); *New York Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir. 1996); *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 758 (5th Cir. 1996).

[9]*Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  See also *Gunaca v. Texas*, 65 F.3d 467, 469 (5th Cir. 1995).

[10]*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting *Celotex*, 477 U.S. at 323-25, 106 S.Ct. at 2552).

[11]*Id.* at 1075.

[12]*Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1046-47 (5th Cir. 1996).

not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence.[13] Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[14] The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[15] Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial.[16]

In order to determine whether or not summary judgment should be granted, an examination of the substantive law is essential. Substantive law will identify which facts are material in that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[17] The Court now turns to a discussion of each of plaintiff's claims.

---

[13]*Little*, 37 F.3d at 1075;  *Wallace*, 80 F.3d at 1047.

[14]*Wallace*, 80 F.3d at 1048 (quoting *Little*, 37 F.3d at 1075).  *See also S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir. 1996).

[15]*McCallum Highlands v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *as revised on denial of rehearing*, 70 F.3d 26 (5th Cir. 1995).

[16]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

[17]*Id.* at 248, 106 S.Ct. at 2510.

**B.    11th Amendment Sovereign Immunity**

In *Will v. Michigan Dept. Of State Police*, the United States Supreme Court held that "[n]either States nor state officials acting in their official capacities are 'persons' within [the] meaning of § 1983."[18] However, the Court also noted that: **"Of course, a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'"**[19]

The United States Fifth Circuit has confirmed that Southern University and the Board of Supervisors are entitled to sovereign immunity under the Eleventh Amendment to the United States Constitution.[20]  The Court stated:

> We have shaped the contours of the Eleventh Amendment immunity to comport with the common-sense notion that a plaintiff cannot avoid the sovereign immunity bar by suing a state agency or an arm of a State rather than the State itself.  "The Eleventh Amendment to the United States Constitution," we have observed "bars suits in federal court by citizens of a state against their own state or a state agency or department."[21]   Thus, even

---

[18]491 U.S. 58, 109 S.Ct. 2304, 2305, 105 L.Ed.2d 45 (1989).

[19]*Id.* at 71, 109 S.Ct. at 2312, n. 10, quoting *Kentucky v. Graham*, 473 U.S. at 167, n. 14, 105 S.Ct. at 3106, n. 14; *Ex parte Young*, 209 U.S. 123, 159-60, 28 S.Ct. 441, 453-54, 52 L.Ed. 714 (1908)(emphasis added).

[20]*Richardson v. Southern University*, 118 F.3d 450 (5th Cir. 1997).

[21]*Id.* at 452, quoting *Delahoussaye v. City of New Iberia*, 937 F.2d 144, 146 (5th Cir. 1991)(quoting *Voisin's Oyster House,*

though Richardson did not name the State of Louisiana as a defendant in this case, Richardson's suit may nonetheless succumb to Eleventh Amendment immunity if the State is the real party in interest.[22]

However, the court also noted: "Congress has not expressly waived sovereign immunity for § 1983 suits."[23]

In *Warnock v. Pecos County Texas*, Warnock sought compensatory and punitive damages, reinstatement and attorney's fees under 42 U.S.C. § 1983 for the violation of her First Amendment rights of freedom of speech, freedom of assembly, and freedom of association.[24]  The defendant asserted the defense of sovereign immunity.  The court noted that "Eleventh Amendment sovereign immunity deprives a federal court of jurisdiction to hear a suit against a state."[25]  The court continued:  "The Eleventh Amendment is invoked when 'the state is the real substantial party in

---

*Inc. v. Guidry*, 799 F.2d 183, 185-86 (5th Cir. 1986)); see also *Penhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-02, 104 S.Ct. 900, 907-08, 79 L.Ed.2d 67 (1984).

[22]*Id.* citing *Edelman v. Jordan*, 415 U.S. 651, 653, 94 S.Ct. 1347, 1350, 39 L.Ed.2d 662 (1974); *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945).

[23]*Id.* at 453, citing *Quern v. Jordan*, 440 U.S. 332, 340-45, 99 S.Ct. 1139, 1144-47, 59 L.Ed.2d 358 (1979); *Voisin's Oyster House, Inc. v. Guidry,* 799 F.2d 183, 186 (5th Cir. 1986).

[24]88 F.3d 341 (5th Cir. 1996).

[25]*Id.* at 343, citing *Penhurst State School and Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 907-08, 79 L.Ed.2d 67 (1984).

interest.'[26]   The state is a real, substantial party in interest when the judgment sought would expend itself on the state treasury or domain or would restrain the state from acting or compel it to act.[27]   Plaintiff seeks relief that would be provided by the state. The state, therefore, is the real, substantial party in interest making sovereign immunity applicable to plaintiff's claims against the judges in their official capacities."[28]

Ultimately, the court held that:   **"Plaintiff's claim for prospective relief (reinstatement), however, is not barred by sovereign immunity.  The Eleventh Amendment does not protect state officials from claims for prospective relief when it is alleged that the state officials acted in violation of federal law.**[29] Plaintiff also seeks attorney's fees from the judges.  Claims for fees associated with prospective relief and fees that may be awarded as costs are not barred by the Eleventh Amendment."[30]

In *Nelson v. University of Texas at Dallas*, a terminated

---

[26]*Id.* quoting *Penhurst*, 465 U.S. at 101, 104 S.Ct. at 908.

[27]*Id.* citing *Penhurst*, 465 U.S. at 101 n.11, 104 S.Ct. at 908-09 n. 11.

[28]*Id.*

[29]*Id.* citing *Ex Parte Young*, 209 U.S. 123, 155-56, 28 S.Ct. 441, 452, 52 L.Ed. 714 (1908); *Edelman v. Jordan*, 415 U.S. 654, 664, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974); *Brennan v. Stewart*, 834 F.2d 1248, 1252 (5th Cir. 1988)(emphasis added).

[30]*Id.* citing *Hutto v. Finney*, 437 U.S. 678, 692, 98 S.Ct. 2565, 2574, 57 L.Ed.2d 522 (1978).

employee of a Texas state university sued its president, and
others, alleging violations of personal leave provisions of the
FMLA and seeking injunctive relief including hiring, reinstatement,
and promotion.[31]   The court held as follows:

> "Pursuant to the *Ex parte Young* exception, the Eleventh
> Amendment is not a bar to suits for prospective relief
> against a state employee acting in his official
> capacity.[32] **Thus, 'prospective injunctive or declaratory
> relief against a state [official] is permitted ... but
> retrospective relief in the form of a money judgment in
> compensation for past wrongs ... is barred.'**[33]  Nelson
> argues that his request for reinstatement is the sort of
> prospective relief that is permitted by the *Ex parte
> Young* doctrine."[34]

The jurisprudence clearly shows that plaintiff is barred from
recovering any relief in the form of a money judgment for past
wrongs against the defendants herein, but plaintiff's claim for
prospective relief under Section 1983 is not barred by the Eleventh
Amendment.   The Court must now determine if the defense of
qualified immunity is applicable under the facts of this case.

**C.   Qualified Immunity**

In *Citrano v. Allen Correctional Center*, the court held that
"[t]he Eleventh Amendment bars suits for damages against a state in

---

[31]535 F.3d 318 (5th Cir. 2008).

[32]*Id.* at 321, citing *Stroman Realty, Inc. v. Wercinski*, 513
F.3d 476, 482 (5th Cir. 2008), *petition for cert. filed*, 76
U.S.L.W. 3611 (U.S. May 5, 2008)(No. 07-1387).

[33]*Id.* at 322 quoting *Brennan v. Stewart*, 834 F.2d 1248, 1253
(5th Cir. 1988)(emphasis added).

[34]*Id.*

federal court unless the state waives its immunity," however, "Congress did not abrogate the states' Eleventh Amendment immunity by enacting § 1983."[35]  The defendants asserted that they were not liable for damages in their official capacity because such suits are barred by the Eleventh Amendment to the United States Constitution.  The court noted that "damages would however, be available against an individual state official who is sued and held liable in his individual capacity."[36]  The court continued:

> In such a suit, the official is entitled to the limited, "qualified immunity" discussed hereinabove.[37]  This immunity is only defeated if the official took the complained of action "with the malicious intention to cause a deprivation of rights," or the official violated clearly established statutory or constitutional rights "of which a reasonable person would have known."[38]

In *Coleman v. Houston Independent School District*, the Fifth Circuit held that qualified immunity shields government officials performing discretionary functions from individual liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a

---

[35]891 F.Supp. 312, 320 (W.D. La. 1995), citing U.S.C.A. Const. Amend. 11 and *Quern v. Jordan*, 440 U.S. 332, 341, 99 S.Ct. 1139, 1145, 59 L.Ed.2d 358 (1979).

[36]*Id.* at 321, citing *Papasan v. Allain*, 478 U.S. 265, 278, 106 S.Ct. 2932, 2940, 92 L.Ed.2d 209, 227 (1986).

[37]*Id.,* citing *Procunier v. Navarette*, 434 U.S. 555, 561, 98 S.Ct. 855, 859, 55 L.Ed.2d 24, 30 (1978).

[38]*Id.,* quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 815, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396, 409-10 (1982).

reasonable person would have known."[39]  The court noted that a claim for qualified immunity is reviewed under a two-step process: "First, we determine whether the plaintiff has alleged the violation of a 'clearly established constitutional right' under currently applicable constitutional standards.  If so, we consider whether the defendant's conduct was nevertheless 'objectively reasonable.'"[40] The court also noted that "[i]n *Siegert v. Gilley*,[41] the [Supreme] Court emphasized that the threshold inquiry in a qualified immunity case is whether the plaintiff has sufficiently alleged the violation of a clearly established constitutional right.  If not, summary judgment is appropriate, and the case should be dismissed."[42]  Furthermore, "[a] necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all."[43]  Also, it is firmly established that individual liability under § 1983 may not be predicated on the vicarious liability doctrine of *respondeat*

---

[39]113 F.3d 528, 532-33, (5th Cir. 1997), quoting *Harlow v. Fitzgerald*, 457 U.S. at 818, 102 S.Ct. at 2738.

[40]*Id.* at 533, quoting *Nerren*, 86 F.3d at 473; *Kelly*, 77 F.3d at 821.

[41]500 U.S. 226, 231, 111 S.Ct. 1789, 1792-93, 114 L.Ed.2d 277 (1991).

[42]*Coleman*, 113 F.3d at 533.

[43]*Id.*, quoting *Siegert*, 500 U.S. at 232, 111 S.Ct. at 1793.

*superior."* [44]

The Fifth Circuit has recently rendered a decision in *DePree v. Saunders* that is applicable to the facts of the case at bar.[45] In *DePree*, a tenured professor who was removed from his teaching duties and evicted from his office for allegedly engaging in negative, disruptive and intimidating behavior sued the state university's president and various administrators and faculty members under § 1983 for alleged constitutional violations. The district court denied the professor's motions for injunctive relief and granted summary judgment in favor of the defendants, in their individual capacities, and the professor appealed.

With respect to prospective injunctive relief, the Fifth Circuit reversed and remanded this issue, holding as follows: "Notwithstanding that DePree may not pursue this action against the Appellees individually, DePree's claim against University administrators in their official capacity may yield prospective injunctive relief."[46]

DePree also argued that the Due Process Clause was violated by the defendants preventing him from teaching and denying him access to the business school. The district court concluded that because

---

[44]*Id.* at 534.

[45]588 F.3d 282 (5th Cir. 2009).

[46]*Id.* at 289, citing *Will v. Michigan*, 491 U.S. at 71, 109 S.Ct. at 2312.

DePree's tenure, salary and title remained intact, he had no property interest in teaching, and he had not been deprived of a constitutional property right.  The Fifth Circuit affirmed this ruling.[47]  The Fifth Circuit stated:

> A "person's interest in a benefit is a 'property' interest for due process purposes if there are ... rules or mutually explicit understandings that support [the] claim of entitlement to the benefit ..." *Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2695, 33 L.Ed.2d 570 (1972).  Constitutionally protected property interests are created and defined by understandings that "stem from an independent source such as state law ..." *Bd. of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709 (33 L.Ed.2d 548 (1972).  Courts have held that no protected property interest is implicated by reassigning or transferring an employee absent a specific statutory provision or contract term to the contrary.  (Citations omitted).  DePree's reliance on the faculty handbook is inapposite, nor has he pointed to any Mississippi law or contract between him and the University reflecting an understanding that he has a unique property interest in teaching.[48]

The Fifth Circuit addressed an issue very similar to the issue in the case at bar in *Hoffmans v. University of Texas at El Paso*.[49]  In *Hoffmans*, a tenured assistant professor had a pay increase recommended by a university vice-president and subsequently approved by the university president.  However, when the budget change was sent to the Executive Vice Chancellor with primary budget responsibilities for approving such salary increases,

---

[47]*Id.* at 289.

[48]*Id.* at 289-90.

[49]22 F.3d 1093, 1994 WL 198869 (5th Cir. May 2, 1994).

plaintiff was advised that her pay increase was denied.[50]

Plaintiff filed a lawsuit alleging various violations of law including a claim under 42 U.S.C. § 1983.  The case proceeded to trial, but the district court granted summary judgment in favor of the defendants on plaintiff's Section 1983 action.  Plaintiff appealed, claiming the district court erred in holding that she had no constitutionally cognizable property interest in her pay raise.[51]

The district court concluded that plaintiff had no cognizable property interest in her pay raise because it was never formally approved by the Executive Vice Chancellor's office.  The Fifth Circuit agreed with the district court's conclusion that a cognizable property interest was not at stake but employed a somewhat different analysis.[52]

The court noted that it has previously recognized that "'[a]n expectation of employment carries with it *some* protected expectations as to a salary.'[53]  Furthermore, the Due Process Clause is implicated less, the more conditional and detailed the expectations become between employer and employee."[54]  The court

_____

[50] *Id.* at *1.

[51] *Id.*

[52] *Id.*

[53] *Id.* at *2, quoting *Williams v. Texas Tech Univ. Health Sciences Ctr.*, 6 F.3d 290, 293 (5th Cir. 1993)(emphasis in original), *cert. denied*, 62 U.S.L.W. 3623 (1994).

[54] *Id.*, citing *Williams*, 6 F.3d at 293.

further noted that any protected expectations plaintiff had with respect to her pay raise were conditioned to the same extent as her annual salary appointment with UTEP, which expressly stated that her salary appointment in a given year had been authorized by the Board of Regents for the system.   The court explained:

> Thus, any expectations of a pay raise - even if approved by the President and mistakenly paid - would necessarily be qualified by the understanding that the UT Board of Regents would have to authorize the higher pay level.  In sum, given the long-standing nature of the employment relationship between UTEP and Dr. Hoffmans, in which UTEP played a role subordinate to that of the UT Administration and Regents in awarding salary increases, Hoffmans cannot now maintain that she was deprived of an entitlement to a pray raise so as to invoke the Due Process Clause.

> Even assuming *arguendo* that under these facts Dr. Hoffmans does have a cognizable property interest in a pay raise, the district court properly granted the motion **because mere negligence on the part of state officials does not implicate the Due Process Clause.**  *See Daniels v. Williams*, 474 U.S. 327, 334 (1986).  That Dr. Hoffmans did not at first receive approval for her pay raise because of Dr. Duncan's failure to ascertain the "equity" nature of the pay raise is uncontroverted.[55]

For the reasons set forth above, the Fifth Circuit concluded that Dr. Duncan's negligence "does not give rise to a § 1983 claim for a Due Process violation."[56]

The Court must now apply the above jurisprudence to the facts of this case.   Clearly, the jurisprudence set forth above establishes that prospective relief against state officials is not

---

[55]*Id.*(emphasis added).

[56]*Id.*

barred by Eleventh Amendment sovereign immunity. However, with respect to plaintiff's 42 U.S.C. § 1983 claim, it is clear from the facts of this case that the plaintiff has not asserted a clearly established constitutional right regarding his alleged contracted-for pay increase. As the defendants have argued, Louisiana law requires that a salary increase be approved by the University President and the Board of Supervisors for Southern University.[57] Plaintiff has failed to set forth any Louisiana law or contract between himself and the defendants which reflects an understanding that plaintiff has a unique property interest in the salary increase at issue.[58]

Furthermore, the facts and the Fifth Circuit's analysis in the *Hoffmans* case is directly applicable to the law and facts of this case. As the court stated in *Hoffmans*, "any expectations of a pay raise - even if approved by the President and mistakenly paid - would necessarily be qualified by the understanding that the UT Board of Regents would have to authorize the higher pay level."[59] Similarly, even if this Court found that the facts in this case supported plaintiff's contention that Pitcher's alleged promise to recommend the salary increase to the Board of Supervisors for Southern University constituted a contract, this would not grant

---

[57]*See* La. R.S. 17:3305.

[58]*See DePree v. Saunders*, 588 F.3d at 290.

[59]*Hoffmans*, at *2.

plaintiff any relief.  Plaintiff knew or should have known that such promise was qualified by the understanding that the Board of Supervisors must approve such a salary increase before it could become final under Louisiana law.  Furthermore, the *Hoffmans* decision makes it clear that the "mere negligence on the part of state officials [*i.e.*, Pitcher allegedly promising a salary increase] does not implicate the Due Process Clause."[60]

## II.  Conclusion

For the reasons set forth above, the Court finds that summary judgment is proper in favor of the defendants and plaintiff's case should be dismissed with prejudice.  The Court further finds that: (1) any claims for money damages or non-injunctive relief must be dismissed under the Eleventh Amendment sovereign immunity;  (2) plaintiff's claims for a salary increase and tenure under 42 U.S.C. § 1983 should be dismissed under the defense of qualified immunity; and (3) all other state law claims should be dismissed without prejudice because the Court declines to exercise supplemental jurisdiction over this claim under 28 U.S.C. § 1337.

Judgment shall be entered accordingly.

Baton Rouge, Louisiana, August 6, 2010.

FRANK J. POLOZOLA
MIDDLE DISTRICT OF LOUISIANA

---

[60]*Id.*